UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| WORTHY GRANT, ) | |
| ) | |
| Plaintiff, ) | **SECOND AMENDED** |
| ) | **COMPLAINT** |
| ) | |
| -against- ) | **JURY TRIAL DEMANDED** |
| ) | |
| THE CITY OF NEW YORK; POLICE ) | 14 Civ. 3178 (DLC) (JCF) |
| DETECTIVE JEFFREY T. AUST, Shield No. ) | |
| 6503; POLICE DETECTIVE CHARLES PEARCE, ) | |
| Shield No. 5558; POLICE DETECTIVE ) | |
| MATTHEW PUMA, Shield No. 6827; POLICE ) | |
| DETECTIVE KENNETH FUNG, Shield No. 3152; ) | |
| POLICE LIEUTENANT JOHN BRENNAN; JOHN ) | |
| DOES; and RICHARD ROES, ) | |
| ) | |
| Defendants. ) | |

-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff WORTHY GRANT seeks relief

for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983, by the United States Constitution, including its Fourth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks

damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and

attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3.      The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiff filed a Notice of Claim with the Comptroller of the City of New York on February 14, 2013.  More than 30 days have elapsed since service of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

7.      Plaintiff WORTHY GRANT was at all times relevant herein a resident of the State of New York, Queens County.

2

8.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9.      Defendants POLICE DETECTIVE JEFFREY T. AUST, POLICE DETECTIVE CHARLES PEARCE, POLICE DETECTIVE MATTHEW PUMA, POLICE DETECTIVE KENNETH FUNG, POLICE LIEUTENANT JOHN BRENNAN, and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE DETECTIVE JEFFREY T. AUST, POLICE DETECTIVE CHARLES PEARCE, POLICE DETECTIVE MATTHEW PUMA, POLICE DETECTIVE KENNETH FUNG, POLICE LIEUTENANT JOHN BRENNAN, and JOHN DOES are sued individually.

10.     Defendants POLICE DETECTIVE JEFFREY T. AUST, POLICE DETECTIVE

CHARLES PEARCE, POLICE DETECTIVE MATTHEW PUMA, POLICE DETECTIVE

KENNETH FUNG, POLICE LIEUTENANT JOHN BRENNAN, and RICHARD ROES are and

were at all times relevant herein duly appointed and acting supervisory officers, servants,

employees and agents of THE CITY OF NEW YORK and/or the New York City Police

Department, responsible for the training, retention, supervision, discipline and control of

subordinate members of the police department under their command.  Defendants are and were

at all times relevant herein acting under color of state law in the course and scope of their duties

and functions as supervisory officers, agents, servants, and employees of defendant THE CITY

OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in

them by THE CITY OF NEW YORK and the New York City Police Department, and were

otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties.  Defendants POLICE DETECTIVE JEFFREY T. AUST,

POLICE DETECTIVE CHARLES PEARCE, POLICE DETECTIVE MATTHEW PUMA,

POLICE DETECTIVE KENNETH FUNG, POLICE LIEUTENANT JOHN BRENNAN, and

RICHARD ROES are sued individually.

## STATEMENT OF FACTS

11.     On February 5, 2013, approximately 10:00 a.m., Plaintiff was present at his home

at 6704 Parsons Blvd, Apt. 4C, in Fresh Meadows, NY.

12.     Defendants DETECTIVE CHARLES PEARCE and DETECTIVE MATTHEW

PUMA knocked on Plaintiff's door.

13.     Plaintiff asked who was there, and the response from the other side of the door

was that it was the police.

14.     Plaintiff asked who the police were looking for, and the response from the police was that they were looking for Plaintiff, and that Plaintiff should open the door.

15.     Plaintiff asked the police if they had a warrant, and one of DETECTIVE CHARLES PEARCE or DETECTIVE MATTHEW PUMA stated that they had a warrant for Plaintiff's arrest.

16.     That was a lie: on February 5, 2013 there were no warrants outstanding for Plaintiff.

17.     Plaintiff  asked the police if they would push the purported warrant under the door, so Plaintiff could examine it.

18.     The police detective who was speaking then told Plaintiff, in sum and substance, to open the door and come out before the police "drag you out like an animal."

19.     Plaintiff was never shown anything purporting to be a warrant.

20.     Upon hearing that threat from the male police detective, Plaintiff opened the door.

21.     DETECTIVE CHARLES PEARCE and DETECTIVE MATTHEW PUMA then entered Plaintiff's apartment.

22.     Plaintiff explicitly told these Defendants that they did not have permission to enter Plaintiff's apartment.

23.     Plaintiff again asked to see the purported warrant, but DETECTIVE CHARLES PEARCE and DETECTIVE MATTHEW PUMA just told Plaintiff, in sum and substance, "just get dressed, let's go."

24.     Plaintiff put on some dirty clothes that were next to him in a dirty laundry bag,

called his then-girlfriend, and was rear-handcuffed by on information and belief DETECTIVE CHARLES PEARCE and DETECTIVE MATTHEW PUMA.

25.    The handcuffs were placed on Plaintiff with an excessive and punitive tightness.

26.    Plaintiff complained that the handcuffs were too tight, but was told to just hold on, and that they would be at the police precinct soon.

27.    Defendants did not loosen Plaintiff's handcuffs.

28.    Plaintiff was taken by DETECTIVE CHARLES PEARCE and DETECTIVE MATTHEW PUMA to the 120th Precinct in Staten Island.

29.    POLICE LIEUTENANT JOHN BRENNAN was, on information and belief, in the police van that took Plaintiff to the 120th Precinct, and also heard and ignored Plaintiff's complaints that his handcuffs were too tight.

30.    POLICE LIEUTENANT JOHN BRENNAN was, on information and belief, in command with regard to the actions of DETECTIVE CHARLES PEARCE and DETECTIVE MATTHEW PUMA, and knew and approved of their unlawfully arresting Plaintiff at his home in the absence of a warrant.

31.    At the 120th Precinct Plaintiff was taken to Defendant DETECTIVE JEFFREY T. AUST, who told Plaintiff - falsely - that Plaintiff had violated a protective order with regard to his ex-girlfriend.

32.    On February 5, 2013 (and the months preceding) there was a protective order in Plaintiff's favor in effect against Plaintiff's ex-girlfriend, protecting Plaintiff against his ex-girlfriend, and barring her from making contact with Plaintiff.

33.    On February 5, 2013 (and the months preceding) there was not any protective

order in effect in Plaintiff's ex-girlfriend's favor.

34.     Plaintiff informed Defendant AUST that he was the one with the protective order in his favor against his ex-girlfriend, to protect him from her.

35.     Defendant AUST told Plaintiff that Defendant AUST indeed saw in the computer that the protective order was in Plaintiff's favor against his ex-girlfriend, but that she had made the complaint, so Plaintiff still needed to be arrested.

36.     Plaintiff was photographed, fingerprinted, and searched at the 120th Precinct.

37.     Defendant AUST confiscated property from Plaintiff, including Plaintiff's ornamental gold and diamond teeth caps, diamond earrings, keys, and shoelaces.

38.     Plaintiff was not provided any property voucher for these items.

39.     Defendant AUST told Plaintiff that he would be released that night, and that he could come back to the precinct to get his property.

40.     Defendant AUST told Plaintiff that Plaintiff should just tell whoever was at the desk at the precinct that Plaintiff had property there, and that those on duty at the precinct could look in Defendant AUST's desk for an envelope with Plaintiff's name and that the property would be there.

41.     At the 120th Precinct, Defendant AUST and a number of other JOHN DOES defendants smoked cigarettes near Plaintiff, despite applicable law and Plaintiff's requests that they not do so.

42.     Plaintiff, who suffers from asthma, felt tightness in his chest due to the smoke.

43.     Plaintiff requested medical care.

44.     Defendant AUST and the other JOHN DOES defendants at the 120th Precinct told

Plaintiff that he would have to wait because if Plaintiff went to the hospital his paperwork would be delayed.

45.     Defendant AUST and the other JOHN DOES defendants at the 120th Precinct otherwise simply ignored Plaintiff's requests for medical care.

46.     Plaintiff was later taken to the basement at the 120th Precinct, and placed in a cell there, where he spent the night.

47.     Plaintiff went to court the next day and was arraigned.

48.     Plaintiff was charged with Aggravated Harassment in the Second Degree in violation of New York State Penal Law § 240.30 (1) (b).

49.     Defendant AUST executed a Supporting Deposition in support of the Criminal Court Complaint that was lodged against Plaintiff.

50.     Defendant AUST's Supporting Deposition alleges that he was informed by Plaintiff's ex-girlfriend that on December 30, 2012 Plaintiff called the ex-girlfriend and told her "that he will beat her up and don't make me foeil (sic) around and have you arrested on these charges."

51.     Plaintiff's ex-girlfriend did not in fact say this to Defendant AUST, or to any other member of the NYPD.  She had on December 30, 2012 come to the 120th Precinct, and simply told a Police Officer Stacey Teterycz, in sum and substance, that Plaintiff had a protective order against her, and that she was afraid Plaintiff would lodge false charges against her.

52.     Plaintiff's ex-girlfriend did not want to press charges against Plaintiff.

53.     On January 4, 2013, Defendant DETECTIVE KENNETH FUNG visited

Plaintiff's ex-girlfriend at her home.  She also told him, in sum and substance, that Plaintiff had a protective order against her, and that she was afraid Plaintiff would lodge false charges against her.  She also mentioned nothing whatsoever to him about any threat from Plaintiff to beat her.

54.     DETECTIVE FUNG completed a "DD-5" form (an NYPD Detective Division Complaint – Follow Up Informational Report) concerning his visit with Plaintiff's ex-girlfriend on January 4, 2013.

55.     In that DD-5 DETECTIVE FUNG indicates that Plaintiff's ex-girlfriend informed him that she received an order of protection against Plaintiff back in 2011, and provided him with Criminal Court docket number.

56.     In that DD-5 DETECTIVE FUNG also indicates that Plaintiff's ex-girlfriend informed him that she (not he, the professional police detective) called the Criminal Court and was told by them that the order of protection was valid until 2017.

57.     On information and belief, Plaintiff's ex-girlfriend never told Detective Fung that there was a valid order of protection in her favor covering the time period December 2012 through February 2013.

58.     On information and belief DETECTIVE FUNG did nothing whatsoever to check whether there was in fact a valid order of protection in effect during that time period, protecting Plaintiff's ex-girlfriend from Plaintiff.

59.     Had DETECTIVE FUNG checked, he would have determined that on January 4, 2013 (and the months preceding) there was a protective order in Plaintiff's favor in effect against Plaintiff's ex-girlfriend, protecting Plaintiff against his ex-girlfriend, and barring her from making contact with Plaintiff, and that on January 4, 2013 (and the months preceding) there was

9

not any protective order in effect in Plaintiff's ex-girlfriend's favor against Plaintiff.

60.    DETECTIVE FUNG in fact obtained an order of protection (either from Plaintiff's ex-girlfriend, or otherwise), and annexed it to another DD-5.

61.    On information and belief that order of protection on its face was not valid as to Plaintiff's ex-girlfriend as against Plaintiff for the period of time December 2012 through February 2013.

62.    Based on the false premise that Plaintiff had violated an order of protection, and that therefore probable cause existed to arrest Plaintiff, DETECTIVE FUNG caused an NYPD "i-card" to issue, requesting that other members of the NYPD arrest Plaintiff on this basis.

63.    On January 23, 2013 DETECTIVE FUNG spoke with DETECTIVE PUMA, who informed DETECTIVE FUNG that he would attempt to locate Plaintiff (in order to arrest him).

64.    An NYPD "I-CARD INVESTIGATIVE DATA" form states "PERPETRATOR – PROBABLE CAUSE TO ARREST," and gives the reason as "DETECTIVE PUMA ASSIGNED INVESTIGATION TO ASSIT [sic] DETECTIVE FUNG WITH THE APPREHENSION OF SUBJECT WANTED FOR FELONY VOOP [violation of order of protection]."

65.    Plaintiff was arrested on February 5, 2013 because of the i-card that was wrongfully issued by DETECTIVE FUNG on January 4, 2013.

66.    Bail was set, and Plaintiff was unable to make the bail.

67.    Plaintiff was sent to the New York City Department of Corrections jails at Rikers Island.

68.    While he was held at Rikers Island, Plaintiff was subjected to a strip search.

69.     Plaintiff was held in custody at Rikers Island until approximately 3 a.m. on

February 8, 2013, when he made bail, and was released.

70.     Plaintiff then returned to the 120th Precinct to try to get his property back.

71.     The police personnel on duty at the precinct told Plaintiff that they did not see

Plaintiff's property there.

72.     Plaintiff's property that was confiscated from him at the 120th Precinct has never

been returned to Plaintiff.

73.     These items were stolen from Plaintiff by Defendants, including Defendant

AUST.

74.     The charges against Plaintiff were dismissed in their entirety on February 11,

2013.

## <u>FIRST CLAIM</u>

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

75.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

76.     By their conduct and actions in seizing plaintiff, entering plaintiff's home and

arresting plaintiff at his home without a warrant, searching plaintiff, strip-searching plaintiff,

converting plaintiff's property, falsely arresting and imprisoning plaintiff, assaulting and

battering plaintiff, maliciously prosecuting plaintiff, abusing process against plaintiff, trespassing

upon plaintiff, violating rights to equal protection of plaintiff, violating rights to due process of

plaintiff, fabricating evidence / false statements against plaintiff, endangering plaintiff's health

and welfare, failing to provide medical care for plaintiff, failing to intercede on behalf of the

plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment

he received at the hands of other defendants, POLICE DETECTIVE JEFFREY T. AUST,

DETECTIVE CHARLES PEARCE, DETECTIVE MATTHEW PUMA, DETECTIVE

KENNETH FUNG, POLICE LIEUTENANT JOHN BRENNAN, JOHN DOES and/or

RICHARD ROES, acting under color of law and without lawful justification, intentionally,

maliciously, and with a deliberate indifference to or a reckless disregard for the natural and

probable consequences of their acts, caused injury and damage in violation of plaintiff's

constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution,

including its Fourth and Fourteenth amendments.

77.     As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

78.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

79.     By their conduct in failing to remedy the wrongs committed by their subordinates

and in failing to properly train, supervise, or discipline their subordinates, supervisory

defendants POLICE DETECTIVE JEFFREY T. AUST, DETECTIVE CHARLES PEARCE,

DETECTIVE MATTHEW PUMA, DETECTIVE KENNETH FUNG, POLICE LIEUTENANT

JOHN BRENNAN,  and RICHARD ROES caused damage and injury in violation of plaintiff's

rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth

and Fourteenth amendments.

80.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

81.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

82.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up

13

of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

85.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs and/or usages of discriminating against men in matters relating to domestic violence.  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

86.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

87.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

88.     The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of the defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

89.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

14

damaged and injured.

## FIFTH CLAIM

## ASSAULT AND BATTERY

90.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

91.     By the actions described above, defendants did inflict assault and battery upon the

plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and

damage to the plaintiff and violated his statutory and common law rights as guaranteed by the

laws and Constitution of the State of New York.

92.     As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## SIXTH CLAIM

## FALSE ARREST AND FALSE IMPRISONMENT

93.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

94.     By the actions described above, defendants caused plaintiff to be falsely arrested

and imprisoned, without reasonable or probable cause, illegally and without a warrant, and

without any right or authority to do so.  The acts and conduct of the defendants were the direct

and proximate cause of injury and damage to the plaintiff and violated his statutory and common

law rights as guaranteed by the laws and Constitution of the State of New York.

95.     As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

### MALICIOUS PROSECUTION

96.     The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97.     By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

98.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### ABUSE OF PROCESS

99.     The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

100.    By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct

of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

101.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

102.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

103.    By the actions described above, defendants violated plaintiff's rights to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

104.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

### TRESPASS

105.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

106.    The defendants willfully, wrongfully and unlawfully trespassed upon the person

17

of plaintiff.

107.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM

### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

108.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

109.    By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

110.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### NEGLIGENCE

111.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

112.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff.  The acts and conduct of the defendants were the direct and

proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

113.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

114.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

115.    Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

116.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

## CONSTITUTIONAL TORT

117.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

118.    Defendants, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 11 and 12 of the New York State Constitution.

119.    A damages remedy here is necessary to effectuate the purposes of §§ 6, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

120.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM

### CONVERSION

121.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

122.    Through their actions in causing a serious interference with, and/or in seriously interfering with, plaintiff's right of possession in his property, and/or in exercising unauthorized possession and/or ownership over plaintiff's property, defendants wrongfully converted plaintiff's property.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

123.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

     a.  Compensatory damages;

     b.  Punitive damages;

     c.  The convening and empaneling of a jury to consider the merits of the claims herein;

     d.  Costs and interest and attorney's fees;

     e.  Such other and further relief as this court may deem appropriate and equitable.


Dated:      New York, New York
            May 20, 2015

                       _____/S/_____
                       JEFFREY A. ROTHMAN, Esq.
                       315 Broadway, Suite 200
                       New York, New York 10007
                       (212) 227-2980

                       Attorney for Plaintiff